IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

WILLIAM A. O'CULL # 15829-045,                                          PLAINTIFF

versus                                           CIVIL ACTION NO. 5:09cv62-DCB-MTP

BUREAU OF PRISONS, ET AL.                                              DEFENDANTS

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on a Motion to Dismiss or, in the Alternative, for Summary Judgment [20] filed by Defendants. Having reviewed the submissions of the parties and the applicable law, the undersigned recommends that the motion be granted, that Plaintiff's claims against Defendants Lappin and Watts be dismissed without prejudice, and that Plaintiff's claims against Defendants Pearson, Chambers and Thoms be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff filed suit *pro se* on March 26, 2009 alleging that he received inadequate medical treatment while incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City").[1] Plaintiff filed suit against the following individuals: Harley G. Lappin, Director of the Bureau of Prisons (BOP); Harrell Watts, National Inmate Appeals Administrator for the BOP; Bruce Pearson, Warden at FCC Yazoo City; Dr. Anthony Chambers, Clinical Director at FCC Yazoo City; and MaryEllen Thoms, former Assistant Director of the BOP's Health Service Division.[2]

---

[1] Plaintiff arrived at FCC Yazoo City on December 20, 2004. *See* Exh. 2 to Defs' MSJ; Declaration of Dr. Anthony Chambers [21] ¶ 3. Plaintiff left FCC Yazoo City on November 1, 2005, and returned on May 22, 2006. *See* Chambers Decl. ¶ 3. He is currently incarcerated there.

[2] Ms. Thoms is now deceased. *See* Declaration of George Bryan Pownall (Exh. 6 to Defs' MSJ) & attached Death Certificate. Plaintiff incorrectly identified her as Ms. "Thomas" in his Complaint.

Plaintiff claims that on December 20, 2004, he had a blood test at FCC Yazoo City to determine whether he had any communicable, infectious or life-threatening diseases. *See* Cplt. ¶ 12. Plaintiff alleges that the results came back on January 4, 2005 with a positive result for the Hepatitis C virus (HCV) which, according to Plaintiff, can cause infection, cirrhosis of the liver, liver failure, cancer and death. *See id.* ¶ 13. Plaintiff alleges that Hepatitis C is treatable and curable with "pigylated interferon and ribavin" therapy. *See id.* ¶ 14. Plaintiff also claims that pursuant to "[s]tandard medical protocols and Center for Disease Control Guidelines," upon diagnosis he should have been immediately vaccinated for Hepatitis A and B. *See id.* ¶ 15. He also claims that "[p]retreatment for HCVrequires genotype testing and monitoring of the patients [sic] liver."[3] *See id.* ¶ 17. Plaintiff alleges that he was not informed that he had HCV until May 31, 2006, that he was not given any genotype testing, that he was not vaccinated for Hepatitis A and B until June 26, 2006[4] and that he did not begin to receive pretreatment until April 2, 2008. *See id.* ¶¶ 23-25. Plaintiff also alleges that he needs a liver biopsy in order to determine whether advanced fibrosis or cirrhosis of the liver has occurred. *See id.* ¶¶ 27-29. Plaintiff claims that he continues to remain untreated for his HCV, and that as a result he suffers from nausea, fatigue, headaches, joint, back and stomach pain, and depression. *See id.* ¶¶ 31, 40; Addendum [12] to Cplt. at 1.

---

[3] Plaintiff alleges that "no treatment can begin until genotype testing is done and pretreatment options cannot be determined prior to same and thererfore [sic] Plaintiff and Defendants were unable to determine what treatment could be done to eradicate the HCV before it causes severe liver impairment." *See* Cplt. ¶ 24.

[4] With respect to the vaccinations, Plaintiff alleges that Dr. Chambers "intentionally and maliciously prescribed a schedule of vaccinations outside of the six month timeframe [in the guidelines of the Centers for Disease Control] to cause Plaintiff physical pain and/or bodily harm knowing that the shots would not be effective if they were not completed within the proper treatment regimen." *See* Cplt. ¶¶ 15, 25-26, 47-48.

In his Complaint, Plaintiff makes a number of *Bivens*[5] claims against Defendants in their official and individual capacities,[6] for denial and/or delay in medical treatment based upon the allegations set forth above. *See* Cplt. ¶¶ 19-51. Plaintiff also complains that Defendants have refused to recommend or transfer him to a medical facility where he can obtain medical care. *See id.* ¶ 44. Plaintiff also makes claims for failure to supervise Dr. Chambers against Defendants Pearson, Thoms, Watts and Lappin. *See id.* ¶ 53. In addition, Plaintiff claims that Defendants Chambers, Thoms and Pearson refused to provide Plaintiff with copies of all of his medical records, in violation of the Freedom of Information Act. *See id.* ¶¶ 60-63. Plaintiff also claims that Defendants engaged in a conspiracy to deprive him of his constitutional rights. Plaintiff seeks an unspecified amount of compensatory and punitive damages, as well as an injunction directing Defendants to provide him with medical treatment and transfer him to a medical facility.

STANDARD FOR SUMMARY JUDGMENT

Because Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [93], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[5] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

[6] "[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990); *see also Gibson v. Fed'l Bureau of Prisons*, 121 Fed. Appx. 549, 551 (5th Cir. Dec. 30, 2004). Thus, to the extent that Plaintiff asserts claims against Defendants in their official capacities, such claims should be dismissed.

3

no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

ANALYSIS

FOIA claims

Plaintiff claims that Defendants Chambers, Thoms and Pearson refused to provide Plaintiff with copies of all of his medical records, in violation of the Freedom of Information Act (FOIA). However, courts lack jurisdiction to hear FOIA claims against individuals, even where such individuals are agency heads or other agency officials named in their official capacity. *See Santini v. Taylor*, 555 F.Supp. 2d 181 (D.D.C. 2008) (citations omitted); *see also Benavides v. U.S. Marshals Service*, 990 F.2d 625, at * 4 (5th Cir. Mar. 24, 1993) ("suit cannot be brought under the FOIA against an individual.") (citation omitted); *Laughlin v. C.I.R.*, 117 F.Supp. 2d 997, 1000 (S.D. Cal. 2000) (FOIA creates cause of action against federal agency, not its individual employees). Accordingly, this claim should be dismissed.

Lack of Personal Jurisdiction Over Lappin and Watts

Defendants Lappin and Watts argue that Plaintiff has failed to establish that they have sufficient "minimum contacts" with Mississippi and, therefore, they should be dismissed for lack of personal jurisdiction. Lappin is employed as Director of the BOP with his office located in Washington, D.C.[7] Watts is employed as National Inmate Appeals Administrator for the BOP with his office also located in Washington, D.C. *See* Cplt. ¶¶ 5, 7; Lappin Decl. ¶¶ 1-2; Watts Decl. ¶¶ 1-2. Neither Defendant resides in, maintains an office in, or owns any property in the state of Mississippi. *See* Lappin Decl. ¶¶ 5-6; Watts Decl. ¶¶ 4-5.

In order for this court to exercise personal jurisdiction over Lappin and Watts, non-residents, Plaintiff must show that they purposely directed activities towards Mississippi or

---

[7] As Director, Lappin is responsible for general overall supervisory management and oversight of the operations of the BOP. *See* Declaration of Harley G. Lappin (Exh. 3 to Defs' MSJ) ¶ 4.

5

purposely availed themselves of the privileges of conducting activities here, and that the cause of action arises out of or results from their forum-related contacts. *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). When asked to specifically state how Lappin violated his constitutional rights, Plaintiff responded that he "sets the B.O.P. policy[8] used to justify this continued showing of deliberate indifference concerning Plaintiff's urgent need of treatment...and refused to act on the BP-11, formal request for his help filed with his office July 30th, 2008." *See* Plaintiff's Response [9] to Court Order at 1; *see also* Plaintiff's Response [25] to Defs' MSJ at 1. With regard to Watts, Plaintiff referred to a Request for Administrative Remedy that he filed with the BOP's Central Office which was signed by Mr. Watts. Plaintiff complains that "rather than act on behalf of Plaintiff, Mr. Watts merely quotes the Clinical Director's erroneous assessment and shows a deliberate indifference to the repeatedly requested treatment for Hepatatis-C."[9] *See* Response [9] to Court Order at 2; *see also* Response to Defs' MSJ at 1.

Courts have held that mere allegations relating to a BOP official's decisions regarding an inmate's administrative appeal outside the forum state, and other supervisory activities over a facility inside the forum state, are insufficient to establish personal jurisdiction. *See Murrell v. Chandler*, 2007 WL 869568, at * 4 (E.D. Tex. Mar. 21, 2007) (granting defendants' motion to dismiss BOP's Administrator of National Inmate Appeals, located in Washington, D.C., for lack

---

[8] Plaintiff does not identify the alleged policy.

[9] Mr. Watts responded to Plaintiff's Central Office Administrative Remedy Appeal as follows: "Review of relevant portions of your medical record reveals a history of Hepatitis C. Discussion with your Clinical Director indicated that you are being scheduled for additional lab work. Once the results of his lab work are obtained, it will be evaluated to determine if a non-formulary request for treatment is indicated. If that determination is made, a review by Central Office will be conducted and, if treatment is approved, it can be administered at FCC Yazoo City. Your lab results and treatment plan will be discussed with you. Please watch the call-outs for your lab and clinical appointments. Based on the foregoing, a medical transfer is not clinically indicated at this time." *See* Response [9] to Court Order at 8.

of personal jurisdiction, stating that "plaintiff's allegations that [defendant] decided his administrative appeals outside the state of Texas is not sufficient contact to support a finding of personal jurisdiction"); *Jones v. Hawk-Sawyer*, 2000 WL 34203850, at * 2 (N.D. Tex. Oct. 19, 2000) (dismissing claim against director of BOP, located in Washington, D.C., because "[p]laintiff's allegations that [defendant] decided two administrative appeals outside the state of Texas and his conclusory allegations of conspiracy are not sufficient contact to support a finding of personal jurisdiction"); *see also Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. Sept. 11, 2003) (dismissing claims against BOP Regional Director, located in Kansas, and BOP Director, located in Washington, D.C., for lack of personal jurisdiction, holding that it was "not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state [Colorado]"); *Johnson v. Rardin*, 1992 WL 9019, at * 1 (10th Cir. Jan. 17, 1992) (dismissing BOP Director and Regional Counsel for lack of minimum contacts where their only involvement was reviewing inmate's appeals and occasionally advising prison staff members in forum state); *Durham v. Lappin*, 2006 WL 2724091, at * 5 (D. Colo. Sept. 21, 2006) (dismissing claim against BOP Director, National Inmate Appeals Administrator and BOP Regional Director, holding that their contacts with the forum state "were completely fortuitous, resulting from the fact that the Plaintiff-to whom they were responding when answering grievances-was located in Colorado"); *Thornton v. Quinlan*, 864 F.Supp. 90, 92 (S.D. Ill. 1994) (declining to exercise jurisdiction over director of BOP whose only contacts with Illinois were in his official capacity).

      The court finds persuasive the reasoning set forth in the case law cited above. Defendant Lappin was not personally involved in making any medical decisions regarding Plaintiff. *See* Lappin Decl. ¶ 7. The fact that Defendant Lappin, as part of his responsibilities as BOP Director, denied Plaintiff relief through the administrative remedy process, is insufficient to establish personal jurisdiction. Likewise, Defendant Watts was not personally involved in making any

decisions regarding Plaintiff's medical care. *See* Watts Decl. ¶ 6. The fact that Defendant Watts also denied Plaintiff relief through the administrative remedy process, is insufficient to establish personal jurisdiction. Accordingly, Defendants Lappin and Watts should be dismissed from this action without prejudice for lack of personal jurisdiction.

Statutory Immunity for Defendant Chambers

Defendants argue that Dr. Chambers is statutorily immune from suit pursuant to 42 U.S.C. § 233(a), which provides in part as follows:

> The remedy against the United States ... for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

The Fifth Circuit has held that Section 233(a) "provides immunity from suit for a PHS employee who causes personal injury to a patient 'resulting from the performance of medical, surgical ... or related functions,' provided that the employee was acting within the scope of his employment at the time of the incident causing such injury." *Schrader v. Sandoval*, 1999 WL 1235234, at * 2 (5th Cir. Nov. 23, 1999). As a result, "if the employee's actions occurred within the course of his duties, a plaintiff's sole remedy is to proceed against the United States under the Federal Tort Claims Act." *Id.*; *see also Montoya-Ortiz v. Brown*, 154 Fed. Appx. 437, 439 (5th Cir. Nov. 22, 2005) (affirming dismissal of *Bivens* claims, stating that Section 233(a) "preempts *Bivens* claims, providing that a plaintiff's sole remedy under that section is a claim brought under the FTCA."). Likewise, other jurisdictions have dismissed *Bivens* claims brought against PHS employees based on statutory immunity. *See Anderson v. Bureau of Prisons*, 176 Fed. Appx. 242, 243 (3d Cir. Apr. 11, 2006), *cert. denied*, 547 U.S. 1212 (2006); *Cuoco v. Moritsugu*, 222 F.3d 99, 107-

08 (2d Cir. 2000); *Walls v. Holland*, 1999 WL 993765, at * 2 (6th Cir. Oct. 18, 1999); *Lewis v. Sauvey*, 708 F.Supp. 167, 169 (E.D. Mich. 1989).

At the time of the events in question, Dr. Chambers was employed by the BOP as the Clinical Director at FCC Yazoo City and was a commissioned officer in the U.S. Public Health Service ("PHS") with the rank of Commander. *See* Declaration of Anthony Chambers, M.D. [21] ¶ 1. Plaintiff's allegations against Dr. Chambers involve his performance of medical or related functions while he was acting within the scope of his employment. Accordingly, the court finds that Dr. Chambers has statutory immunity under 42 U.S.C. § 233(a) and, therefore, he is entitled to summary judgment on Plaintiff's claims.

Defendants Pearson and Thoms - Lack of Personal Involvement

There is no *respondeat superior* liability in *Bivens* actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Thus, in order to be liable, a prison official must either be personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.*

As set forth in his Declaration, Defendant Pearson, the Warden of FCC Yazoo City, holds a supervisory position and was not personally involved in the alleged denial of medical care.[10] Indeed, Plaintiff does not allege that Warden Pearson was personally involved in his medical treatment. Nor does Plaintiff allege that Warden Pearson implemented a deficient policy. Indeed, the basis of Plaintiff's claims against Warden Pearson is his failure to provide Plaintiff

---

[10] Warden Pearson has overall management responsibility for FCC Yazoo City, but delegates management of day-to-day operations to several Associate Wardens, who in turn delegate to various department heads. *See* Declaration of Bruce Pearson (Exh. 5 to Defs' MSJ) ¶ 3. FCC Yazoo City's Clinical Director is responsible for diagnosis, treatment and care of the inmates. The day-to-day management of FCC Yazoo City's Health Services Department is delegated to the institution's Health Services Administrator. *See id.* ¶ 4. Warden Pearson was not personally involved in making any medical decisions regarding Plaintiff. *See id.* ¶ 5.

relief through the administrative remedy process.[11]  *See* Response [9] at 2.  This is not a

sufficient basis for imposing liability.  *See Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (holding that prison supervisory officials "reasonab[ly] discharge[d]...their duty to protect the inmates in their care" where they "responded to [plaintiff's] complaints by referring the matter for further investigation or taking similar administrative steps."); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (holding that supervisory officials are entitled to rely on expertise of, and medical judgments made by, prison physicians with respect to inmates' medical treatment); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *see also Poullard v. Blanco*, 2006 WL 1675218, at * 5 (W.D. La. June 9, 2006) (dismissing claim of failure to provide adequate medical care against supervisory officials who "acted consistent with their roles in the prison administration by addressing plaintiff's grievance or referring him to an avenue by which he might obtain relief.").; *Mosley v. Thornton*, 2005 WL 1645781, at * 5 (E.D. La. June 20, 2005) ("Plaintiff merely alleges that the Warden was responsible for Thornton and the medical department and that he responded to plaintiff's appeal...However, the fact that the Sheriff responded to plaintiff's appeal is insufficient to support a constitutional claim against the Sheriff."); *Jones v. Livingston*, 2005 WL 3618316, at * 3 (S.D. Tex. Jan. 6, 2005) (holding that failure to provide adequate medical care claim asserted against supervisory prison official should

---

[11] In particular, Plaintiff takes issue with Warden Pearson's response to Plaintiff's Request for Administrative Remedy dated April 18, 2008.  Warden Pearson denied him relief, stating: "An investigation into your concerns reveals you were diagnosed with Hepatitis C in January 2005. Your laboratory studies are within the normal range and you are enrolled in a Chronic Care Clinic to monitor your condition. On April 7, 2008, your doctor informed you that you do not meet the criteria for chronic Hepatitis C treatment, and you verbalized understanding of this information."  *See* Response [9] at 4.

be dismissed because "the fact that he did not respond to, or denied, plaintiff's grievances does not, alone, state a claim..."); *Anderson v. Pratt*, 2002 WL 1159980, at * 3 (N.D. Tex. May 29, 2002) (Warden's review and denial of grievance did not show personal involvement in deprivation of constitutional rights); *Alexander v. Fed'l Bureau of Prisons*, 227 F.Supp. 2d 657, 665-66 (E.D. Ky. 2002) (Warden's signing an administrative remedy response prepared by staff[12] did not establish constitutional violation); *Lamkey v. Roth*, 1997 WL 89125, at * 5 (N.D. Ill. Feb. 26, 1997) (Warden's signing of grievance report "concurring in the grievance officer's finding" insufficient to establish personal involvement).

Because Defendant Pearson was not personally involved in Plaintiff's medical treatment, and because there is no *respondeat superior* liability in a *Bivens* action, Plaintiff's claims against him should be dismissed with prejudice.

Likewise, Plaintiff has not established the requisite personal involvement on the part of Defendant Thoms.[13] According to Plaintiff, Ms. Thoms, the BOP's Assistant Director of Health Services, was a District of Columbia resident. *See* Cplt. ¶ 6. Thus it is clear that she could not have been involved in the day-to-day provision (or denial) of medical services to Plaintiff at FCC Yazoo City. Indeed, Ms. Thoms is not mentioned anywhere in Plaintiff's medical records. *See*

---

[12] Warden Pearson did not personally prepare or review the response to Plaintiff's Request for Administrative Remedy. Rather, because Plaintiff's grievance concerned a medical issue, the Health Services Administrator would have investigated and prepared the response. *See* Pearson Decl. ¶ 5.

[13] Defendants have not raised this argument on behalf of Ms. Thoms. Rather, they have argued simply that Plaintiff's claims against Ms. Thoms should be dismissed without prejudice for insufficient service of process. *See* Defs' Memorandum [23] at 6-8. Nevertheless, the court has the authority to recommend that Plaintiff's claims against Ms. Thoms be dismissed with prejudice. Because Plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted." *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming appropriate *sua sponte* evaluation of the merit of the asserted claim).

[21]. When asked to specifically state how Ms. Thoms violated Plaintiff's constitutional rights, Plaintiff responded: "Ms. Thomas holds an official position of authority within the institutions [sic] medical department and joined Dr. Chamber's [sic] and the prisons [sic] Warden in their successful conspiracy to deprive Plaintiff treatment necessary to prevent permanent liver damage from untreated Hepatitis-C." *See* Reply [9] at 1. However, as noted above, the fact that Ms. Thoms has a position of authority is not enough to impose liability, as there is no *respondeat superior* liability in *Bivens* actions.[14] Moreover, conclusory allegations of a conspiracy are insufficient to state a constitutional claim. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *see also Morrison v. City of Baton Rouge*, 761 F.2d 242, 244 (5th Cir. 1985) (stating that plaintiff must state specific facts, not mere conclusory allegations, to state a Section 1983 claim).

For the foregoing reasons, Plaintiff's claims against Ms. Thoms should be dismissed with prejudice.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [20] should be granted, that Plaintiff's claims against Defendants Lappin and Watts be dismissed without prejudice, and that Plaintiff's claims against Defendants Pearson, Chambers and Thoms be dismissed with prejudice.[15]

## NOTICE OF RIGHT TO OBJECT

---

[14] Indeed, in his Reply [25], Plaintiff indicated that he is suing Ms. Thoms' "office."

[15] Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Thus, because the court has found that Plaintiff has failed to establish his claims against Defendants, it need not reach the question of whether Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 16th day of December, 2009.

s/ Michael T. Parker<br>
United States Magistrate Judge